IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRENDA BROWN,                                           3:13-cv-00904-MA

               Plaintiff,                              OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

               Defendant.


MERRILL SCHNEIDER
Schneider Kerr & Gibney Law Offices
P.O. Box 14490
Portland, Oregon 97293

    Attorneys for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

GERALD J. HILL
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104

    Attorneys for Defendant


1 - OPINION AND ORDER

MARSH, Judge

Plaintiff, Brenda Brown, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for supplemental security income (SSI) disability benefits under Title XVI of the Social Security Act (the Act). See 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, I reverse the final decision of the Commissioner and remand for further proceedings consistent with this Opinion and Order.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed the instant application for SSI on November 20, 2008, alleging disability due to bipolar disorder, clinical depression, diabetes, Osgood-Schlatter disease, and borderline personality disorder. Tr. 277. Plaintiff's claim was denied initially and upon reconsideration. An Administrative Law Judge (ALJ) presided over a hearing on February 25, 2011, and a supplemental hearing on May 20, 2011. At the first hearing, Plaintiff testified but was not represented by counsel. Tr. 78-91. At the second hearing, Plaintiff testified again and was represented by counsel. Tr. 67-77. Vocational Expert (VE) James Ryan, Ph.D., was also present throughout both hearings and testified at the conclusion of the first hearing. On June 7, 2011, the ALJ issued a decision denying Plaintiff's application. The

2 - OPINION AND ORDER

Appeals Council, however, reversed and remanded for further consideration.

On remand, a different ALJ held a new hearing on January 2, 2013, at which Plaintiff testified and was represented by counsel. VE Gary Jesky was present throughout the hearing and testified. On January 23, 2013, the ALJ issued an opinion again denying Plaintiff's claim. The Appeals Council declined review and Plaintiff timely appealed to this Court.

## FACTUAL BACKGROUND

Born on December 13, 1971, Plaintiff was 36 years old on the alleged onset date of disability and 41 years old on the date of the most recent hearing. Tr. 250. Plaintiff has a 12th grade education with past relevant work as a Call Center Telemarketer, Plastic Bottle Production Worker, and Chips and Nuts Manufacturing or Processing Quality Assurance Technician. Tr. 283. Plaintiff alleges her conditions became disabling on August 1, 2008. Tr. 250.

In addition to her testimony at the three hearings, Plaintiff submitted an Adult Function Report. Tr. 302-07. Plaintiff's friend, Shardell Bodda, also submitted a Third Party Function Report. Tr. 286-93. On March 24, 2009, Paul S. Stoltzfus, Ph.D., performed a psychodiagnostic evaluation and submitted an opinion as to Plaintiff's mental impairments. Tr. 485-91. On March 21, 2009, Yin Kan Hwee, M.D., performed a comprehensive physical evaluation

3 - OPINION AND ORDER

and submitted an opinion as to Plaintiff's physical impairments. Tr. 557-61. Finally, on April 8, 2009, Joshua J. Boyd, Psy.D., reviewed the medical record and submitted a Mental Residual Functional Capacity Assessment, and on April 13, 2009, Martin Kehrli, M.D., reviewed Plaintiff's records and submitted a Physical Residual Functional Capacity Assessment. Tr. 513-24.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(a)(4)(i)-(v). Each step is potentially dispositive. The claimant bears the burden of proof at Steps One through Four. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national economy that the claimant can perform. See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One, the ALJ determined Plaintiff has not engaged in substantial gainful activity since the application date, November 20, 2008. See 20 C.F.R. §§ 416.920(b), 416.971 et seq.; Tr. 21.

At Step Two, the ALJ determined Plaintiff's degenerative disc disease with a history of a microdiscectomy, diabetes, depressive disorder not otherwise specified, borderline personality disorder, amphetamine dependence, cannabis dependence, and history of

polysubstance abuse were severe impairments.   See 20 C.F.R. §
416.920(c); Tr. 21-22, 27.

At Step Three, the ALJ determined Plaintiff does not have an
impairment or combination of impairments that meet or medically
equal any listed impairment.   See 20 C.F.R. §§ 416.920(d), 416.925,
416.926; Tr. 22-23, 27-28.

The ALJ found Plaintiff has the residual functional capacity
(RFC) to perform light work, but further limited Plaintiff to no
climbing of ropes, ladders, or scaffolds; and occasional climbing
of stairs and ramps.   The ALJ further limited Plaintiff to simple,
routine, repetitive work without public contact, occasional or
minimum contact with coworkers and supervisors, and working best
alone and without teamwork to complete a task.   Finally, the ALJ
found that Plaintiff would occasionally have periods of marked
attention and concentration deficits.   Tr. 23-25.   The ALJ,
however, found that if Plaintiff ceased substance abuse she would
no longer experience occasional periods of marked attention and
concentration deficits.   Tr. 28-29.

At Step Four, the ALJ found Plaintiff cannot perform her past
relevant work.   See 20 C.F.R. § 416.965; Tr. 26, 29.

At Step Five, however, the ALJ found that jobs do not exist in
significant numbers in the national economy that Plaintiff can
perform if she continues substance abuse.   Tr. 26-27.   If Plaintiff
ceased substance abuse, however, the ALJ found jobs would exist in

5 - OPINION AND ORDER

significant numbers in the national economy that Plaintiff can perform, including Janitor and Small Product Assembler.   See 20 C.F.R. §§ 416.969, 416.969(a); Tr. 29-30.

Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff raises three issues on appeal.   First, Plaintiff submits the ALJ erred at Step Three by failing to provide rationale for the "paragraph B" criteria findings.   Second, Plaintiff asserts the ALJ erred in considering Plaintiff's testimony because the ALJ impermissibly made two separate credibility findings and ultimately cited insufficient reasons to reject Plaintiff's testimony. Finally, Plaintiff argues the ALJ's RFC is not supported by substantial evidence because the ALJ failed to account for the most recent evidence in the medical record and failed to obtain new evidence concerning Plaintiff's impairments.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.   42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.   The

6 - OPINION AND ORDER

court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I.   Step Three "Paragraph B" Findings

Plaintiff first argues the ALJ failed to provide rationale for the "paragraph B" findings at Step Three. At Step Three, "[a]n ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001). "A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." Id. To satisfy the "paragraph B" criteria used to evaluate mental impairments at Step Three, the claimant's impairments must result in at least two of the following:

///

///

///

7 - OPINION AND ORDER

(1)  Marked restriction of activities of daily living;
(2)  Marked difficulties in maintaining social functioning;
(3)  Marked difficulties in maintaining concentration, persistence, or pace; or
(4)  Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1 at 12.04, 12.08.

The ALJ found that "in the presence of substance abuse disorders[,] mental health factors result in a mild restriction in activities of daily living, moderate to marked difficulties in social functioning, and moderate difficulties with regard to concentration, persistence or pace," and that "[t]here is no history of episodes of decompensation." Tr. 23. If Plaintiff ceased substance abuse, the ALJ found Plaintiff's limitations with respect to social functioning would downgrade to "moderate." Tr. 27.

The ALJ, however, did not provide any explanation for these findings. While the ALJ's findings are similar - though not identical - to the findings of Dr. Boyd, that connection is for the ALJ to draw, not for the Court to infer. <u>See</u> Tr. 509. Accordingly, because the ALJ failed to provide any explanation of the paragraph B findings, the ALJ made the sort of "boilerplate finding" that is insufficient at Step Three. <u>See</u> <u>Lewis</u>, 236 F.3d at 512.

///

///

8 - OPINION AND ORDER

## II.    Plaintiff's Credibility

In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis.   20 C.F.R. § 404.1529. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.   Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996).   Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear, and convincing reasons for doing so.   Id. at 1281.

If an ALJ finds that the claimant's testimony regarding his subjective symptoms is unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive."   Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).   In doing so, the ALJ must identify what testimony is credible and what testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony."   Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).   The ALJ may rely upon ordinary techniques of credibility evaluation in weighing the claimant's credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

///

///

## A.    February 25, 2011, Hearing Testimony

At the February 25, 2011, hearing Plaintiff testified that she cooks during the afternoon, cleans her own laundry, and goes grocery shopping with her sister. Tr. 83. In a typical day she takes care of her dog and does some cleaning around the house, but spends a significant amount of time sitting while watching movies, surfing the internet, and playing video games. Tr. 83. Plaintiff testified that she was currently receiving treatment for depression, diabetes, and back pain, and that her treatment for depression and diabetes seemed to be working. Tr. 84. Plaintiff reported at this hearing that she had abused illegal drugs including marijuana and methamphetamine in the past, but that she had not done so for over a year. Tr. 85. Plaintiff additionally reported that she has never abused alcohol, but that she used it "[o]n and off." Tr. 85. As to her ability to lift items, Plaintiff testified she cannot lift more than five pounds. Tr. 89.

## B.    May 20, 2011, Hearing Testimony

At the May 20, 2011, hearing Plaintiff testified that the last time she used illegal drugs was in March of 2011 while she was in a mental hospital, and that she had not abused alcohol since Christmas in 2010. Tr. 71-72. As to her efforts to stop using drugs, Plaintiff testified that she uses resources from Narcotics Anonymous, although she had not been to a meeting since August of 2010, and that she frequently speaks by telephone with her sponsor.

Tr. 72-73.   Plaintiff testified that many of the problems in her life have been a result of using drugs and alcohol.   Tr. 75.

### C.   January 2, 2013, Hearing Testimony

At the January 2, 2013, hearing on remand from the Appeals Council, Plaintiff testified that her day-to-day activities depend on how much pain she is in, and that she frequently has to lay down during the day.   Tr. 44.   Plaintiff reported that the pain centers around her hips and down into her feet, and that she had two back surgeries in 2011 to try to resolve this pain.   Tr. 44.   Plaintiff noted, however, that she had not received any medical treatment since returning to Oregon in the Spring of 2012, after living in Virginia.   Tr. 46.   As to her diabetes, Plaintiff reported that she was in the "early stages" of diabetic neuropathy that causes sharp, stabbing pains in her feet and calves, poor circulation, numbness, and tingling.   Tr. 49.   As to her functional limitations, Plaintiff testified that she can only stand for 15-20 minutes at a time, and can sit for less than one hour at a time.   Tr. 50.   Plaintiff noted that when she returned to Oregon she attempted to work at a cannery, but that she was asked to leave because of workplace problems caused by her back pain.   Tr. 54.

As to drug use, Plaintiff reported that she had used methamphetamine three weeks before the hearing, but that such use had been a relapse and she had not been using regularly since May of 2012.   Tr. 50-51.   Plaintiff reported that she did not use

11 - OPINION AND ORDER

methamphetamine while she was in Virginia from July of 2009 until January of 2012. Tr. 51. Plaintiff reported that she used marijuana three-to-four times per week to help her pain, but that she had not used alcohol for approximately two years. Tr. 54. As to her mental health, Plaintiff testified that her depression symptoms had been particularly bad, and the medications prescribed by her current mental health provider aggravated her symptoms and caused her to sleep more than usual. Tr. 53.

**D.    December 19, 2008, Adult Function Report**

In her Adult Function Report, Plaintiff reported that her daily activities consist of waking up around 10:00 am, showering, and looking for part-time work until around 4:00 p.m. Tr. 302. When she returns home, Plaintiff reported she eats dinner and relaxes until approximately 10:00 p.m. Tr. 302. Plaintiff reported that she has no problems with personal care, and prepares meals daily for between 20 minutes and one hour. Tr. 300-01. Plaintiff noted that she performs household chores on a daily basis and cleans her own laundry every week. Tr. 301.

Plaintiff checked that her knee, hip, and back problems limit her abilities to lift, squat, bend, stand, walk, kneel, climb stairs, and remember. Tr. 307. Plaintiff reported she could walk "about a mile" before requiring 15 minutes of rest, and that she can pay attention "for a long time." Tr. 307. Plaintiff reported no problems getting along with others or following instructions,

12 - OPINION AND ORDER

and noted that she "work[s] well under pressure."  Tr. 307-08.
Plaintiff wrote, however, that she felt "sluggish" due to her
diabetes and lack of sleep.  Tr. 309.

### E.  Sufficiency of the ALJ's Credibility Determination

The ALJ found that Plaintiff "is credible concerning the many
symptoms and limitations," but that the credibility determination
was not a "determination of truthfulness, intention, or sincerity,
but whether the information is supported by objective medical
findings and consistent with actual findings."  Tr. 24-25.
Accordingly, with respect to Plaintiff's functioning if she ceased
substance use, the ALJ found Plaintiff's credibility "low because
of [Plaintiff's] consistent history of manipulative behavior,
denial of substance abuse despite contrary evidence, and her
history of refusing to take responsibility for her own actions."
Tr. 28-29.  I conclude these reasons are not clear and convincing
reasons supporting the manner in which the ALJ discredited
Plaintiff's testimony.

At the outset, I reject Plaintiff's suggestion that the ALJ
conducted two separate credibility analyses.  Read as a whole, the
ALJ's credibility analysis found that Plaintiff was being truthful
about her symptoms, but that her reported symptoms and limitations
described her functionality when she was using illegal drugs and
did not provide an accurate report of her functionality in the
absence of substance abuse.

13 - OPINION AND ORDER

Nonetheless, the ALJ's reasons for discrediting Plaintiff's testimony are insufficient because they are not logically related to the manner in which the ALJ rejected Plaintiff's testimony. All of the reasons cited by the ALJ (Plaintiff's history of manipulative behavior, denial of substance abuse, and refusal to take responsibility for her actions) are relevant to the truthfulness of Plaintiff's testimony. They do not, however, speak to the ALJ's finding that Plaintiff was telling the truth about her symptoms and limitations, but that her testimony was not reflective of her functional capacity in the absence of substance abuse. Properly explained, it is possible that the ALJ's conclusion in this respect may find sufficient support in the record. But, again, that explanation is for the ALJ to provide, not for the Court to infer. Accordingly, the ALJ failed to cite clear and convincing reasons in support of his conclusion concerning Plaintiff's credibility.[1]

## III. Remand

After finding the ALJ erred, this Court has discretion to remand for further proceedings or for immediate payment of benefits. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). "Remand for further administrative proceedings is appropriate if

---

[1] Because the ALJ failed to cite clear and convincing reasons for the manner in which he rejected Plaintiff's testimony, the RFC is insufficient. Accordingly, the Court need not reach Plaintiff's additional arguments concerning the RFC.

enhancement of the record would be useful." <u>Benecke v. Barnhart</u>,

379 F.3d 587, 593 (9th Cir. 2004).  When, however, "the record has

been developed fully and further administrative proceedings would

serve no useful purpose," a remand for an award of benefits is

appropriate.  <u>Id.</u>

> It is well settled that a court will:
>
> [C]redit evidence that was rejected during the
> administrative process and remand for an immediate award
> of benefits if (1) the ALJ failed to provide legally
> sufficient reasons for rejecting the evidence; (2) there
> are no outstanding issues that must be resolved before a
> determination of disability can be made; and (3) it is
> clear from the record that the ALJ would be required to
> find the claimant disabled were such evidence credited.

<u>Id.</u> (citing <u>Harman</u>, 211 F.3d at 1178).  Nonetheless, "[a] claimant

is not entitled to benefits . . . unless the claimant is, in fact,

disabled, no matter how egregious the ALJ's errors may be."

<u>Strauss v. Comm'r Soc. Sec. Admin.</u>, 635 F.3d 1135, 1138 (9th Cir.

2011).   Thus, a remand for further proceedings is generally

appropriate unless, in light of the ALJ's errors, it is clear from

the record that the claimant is disabled within the meaning of the

Act.  <u>See</u> <u>id.</u>

Further administrative proceedings are useful in this case

because the record requires additional development and the ALJ's

findings require additional explanation.  On remand, in light of

the age of the prior examining opinions and potential changes in

Plaintiff's condition, the ALJ shall order new mental and physical

examinations and permit Plaintiff to submit additional medical

15 - OPINION AND ORDER

evidence. In addition, the ALJ shall explain the rationale for the paragraph B findings, citing specific record evidence. Finally, the ALJ shall reconsider Plaintiff's testimony and, if the ALJ again chooses to discredit Plaintiff's testimony, cite legally sufficient reasons relevant to the credibility determination.

### CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED, and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this ___7___ day of July, 2014.

Malcolm F. Marsh
United States District Judge